ROBIN J. SAMUEL (SBN 173090)
HOGAN & HARTSON, L.L.P.
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
E-mail: rjsamuel@hhlaw.com

MARK R. CHESKIN (PRO HAC)
BRIAN L. LERNER (PRO HAC)
HOGAN & HARTSON, L.L.P.
Mellon Financial Center
1111 Brickell Avenue, Suite 1900
Miami, Florida 33131
Telephone: (305) 459-6500
Facsimile: (305) 459-6550
E-mail: mrcheskin@hhlaw.com
        bllerner@hhlaw.com

Attorneys for Defendant/Counter-Plaintiff,
OFFICE DEPOT, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ALBERT ANDY COHN, an individual,<br><br>     Plaintiff,<br><br>  vs.<br><br>OFFICE DEPOT, INC.,<br>and DOES 1 through 20, inclusive,<br><br>     Defendants.<br><br>OFFICE DEPOT, INC.,<br><br>     Counter-Plaintiff,<br><br>vs.<br><br>Albert Andy Cohn, an individual,<br><br>     Counter-Defendant. | Case No. CV 07-4330-GW(JTLx)<br><br>Assigned For All Purposes to The Honorable George H. Wu<br><br>**OFFICE DEPOT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT [FRCP 56] AND/OR FOR ENTRY OF AN ORDER SPECIFYING FACTS AS APPEARING WITHOUT SUBSTANTIAL CONTROVERSY [FRCP 56(D)];**<br><br>**Statement of Uncontroverted Facts and Conclusions of Law and Proposed Order Filed Concurrently Herewith**<br><br>Date: March 10, 2008<br>Time: 8:30 a.m.<br>Place: Courtroom 10 |

1
2

## TABLE OF CONTENTS

PAGE

I.      Summary of Argument................................................................1

II.     Statement of Facts.....................................................................2

        A.      The Allied Transaction .................................................2

        B.      Office Depot and Allied Remain Separate Entities............................3

        C.      Office Depot Only Assumed Specified
                Allied Employment Agreements .........................................4

        D.      The Integration of the Specified
                Acquired Allied Assets and Liabilities ................................5

        E.      Office Depot's Employment of Cohn.........................................5

III.    Argument ................................................................6

        A.      Legal Standard................................................................6

        B.      Office Depot Did Not Assume the Cowie Agreement
                Through Its Transaction with Allied ................................7

                1.      Office Depot Did Not Assume Liability
                        For The Cowie Agreement Under The SPA ..........................7

                        a.      The SPA Provides that Office Depot Only
                                Assumed Cohn's Written Employment
                                Agreement, Dated March 25, 2002, and
                                Not the Oral Cowie Agreement .......................7

                        b.      Office Depot Did Not Assume the Cowie
                                Agreement Through Partial Performance ...................10

                2.      Office Depot and Allied Remain
                        Two Separate Companies........................................11

                3.      Office Depot Is Not a Mere Continuation of Allied ..............13

                4.      Neither Allied Nor Office Depot Entered Into
                        the SPA to Fraudulently Escape Liability for Debts ............14

1

**IV.    Conclusion** ..................................................................................**14**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OFFICE DEPOT'S MOTION FOR
SUMMARY JUDGMENT

1

## TABLE OF AUTHORITIES

2

PAGE

3

### FEDERAL CASES

4
*Addisu v. Fred Meyer, Inc.,*

5
      **198 F.3d 1130 (9th Cir. 2000) ------------------------------------------ 6**

6
*Anderson v. Liberty Lobby, Inc.,*

7
      **477 U.S. 242 (1986) ------------------------------------------------------- 6**

8
*Celotex Corp. v. Catrett,*

9
      **477 U.S. 317 (1986) ------------------------------------------------------- 6**

10
*Sunnyside Dev. Co., LLC v. OPSYS Ltd.,*

11
      **No. C 05 0553 MHP, 2007 WL 2562142 (N.D. Cal. Aug. 29, 2007) ------- 12**

12

### STATE CASES

13
*Am. Cas. Co. v. Curran Prods., Inc.,*

14
      **212 Cal.App.2d 386 (Cal. Ct. App. 1963) -------------------------------- 10**

15
*Franklin v. USX Corp.,*

16
      **87 Cal. App. 4th 615 (Cal. Ct. App. 2001) ------------------------------- 7, 11, 12**

17
*Marks v. Minn. Mining & Mfg. Co.,*

18
      **187 Cal.App.3d 1429 (Cal. Ct. App. 1986)-------------------------------- 12**

19
*Paul v. Layne & Bowler Corp.,*

20
      **9 Cal.2d 561 (Cal. 1937) ------------------------------------------------- 10**

21
*Ray v. Alad Corp.,*

22
      **19 Cal. 3d 22 (Cal. 1977) ------------------------------------------------- 7, 10, 13**

23
*Scudder v. Perce,*

24
      **159 Cal. 429 (Cal. 1911) -------------------------------------------------- 9**

25
*Steenolsen v. Squaw Valley SLI Corp.,*

26
      **Case No. BC 243817, 2004 WL 5175941 (Cal. Super. Ct. Nov. 7, 2004) - 12**

27

28

OFFICE DEPOT'S MOTION FOR
SUMMARY JUDGMENT

1

## FEDERAL RULES

2

**Federal Rule of Civil Procedure 56**-----------------------------------------------------**6**

3

## OTHER AUTHORITIES

4

**23 California Jurisprudence 2d, Statute Of Frauds, Section 129**---------------- **10**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OFFICE DEPOT'S MOTION FOR
SUMMARY JUDGMENT

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

**I.    <u>Summary of Argument</u>**

3

In this breach of contract action, Plaintiff Albert Andy Cohn ("Cohn") seeks

4

to impose upon Office Depot, Inc. ("Office Depot"), obligations under an alleged

5

oral contract (the "Cowie Agreement") with Allied Office Supplies, Inc. ("Allied").

6

Specifically, Cohn contends that Office Depot assumed the Cowie Agreement in

7

May 2006 when it acquired certain assets and certain liabilities of Allied under a

8

confidential document entitled the "Stock Purchase Agreement (the "SPA")."

9

Cohn's argument is unavailing as a matter of law.

10

The law is clear that a purchaser will be found to have assumed a liability only

11

under four very limited circumstances, none of which are applicable here.  First, the

12

SPA makes clear that Office Depot assumed only those employment agreements and

13

arrangements enumerated in the contract.    While Cohn's separate written

14

employment agreement is enumerated in that contract, nowhere did Allied list or

15

disclose the oral "Cowie Agreement."  Second, after consummating the transaction,

16

Allied and Office Depot remained separate and independent entities.  Third, Cohn

17

has no evidence to establish that Office Depot merely is a continuation of Allied as

18

Office Depot has spent substantial resources integrating those certain assets and

19

certain liabilities it assumed into the Office Depot business model.  Fourth, Cohn has

20

no evidence to establish that the transaction was entered into fraudulently to escape

21

liability for debts.

22

Accordingly, even assuming that the Cowie Agreement is a contract that

23

would bind Allied under California law (which it is not), Office Depot did not

24

25

26

27

28

OFFICE DEPOT'S MOTION FOR SUMMARY JUDGMENT

1   assume that contract, and thus respectfully requests that this Court enter summary

2   judgment in its favor.[1]

3   ## II.    Statement of Facts

4   ### A.    The Allied Transaction

5   Office Depot conducts business via three divisions:  North America Retail;

6   North America Business Solutions; and International.  (SUF 1).  The Business

7   Solutions Division ("BSD") provides office supply products and services directly to

8   businesses through a network of contract sales teams, telephone account managers,

9   catalogs, direct mail, and multiple web sites.  (SUF 2).

10  In May 2006, as part of its expansion of BSD, Office Depot acquired the

11  business of AOS Acquisition LLC f/k/a AOS Acquisition Corp. d/b/a Allied Office

12  Supplies and/or Allied Office Products (collectively "Allied").  (SUF 3).  Allied was

13  an independent dealer of office products and services including office supplies,

14  break room and coffee services, janitorial supplies, computer products, custom

15  printing, managed print services, promotional items, and office furniture and design,

16  and had operations throughout the United States, in particular a strong presence in

17  the Northeast.  (SUF 4).

18  With respect to the structure of the transaction, following months of arms-

19  length negotiations, Office Depot and Allied agreed that Office Depot would acquire

20  certain assets and certain liabilities of Allied, but not all of the assets and all of the

21  liabilities of Allied.  (SUF 5).  To facilitate such an acquisition, Allied converted its

22  corporation to an LLC and transferred some, but not all, of its assets and some, but

23  not all, of its liabilities to a newly formed company called OCS Acquisition Corp.

24

25

26  _____

    [1]    Office Depot is simultaneously filing its Response In Opposition to Cohn's
27  Motion for Summary Judgment ("Opposition"), wherein it raises disputed issues of
    fact as to whether the Cowie Agreement is a contract under California law; and
28  whether Cohn breached the alleged terms of the Cowie Agreement.  But for
    purposes of this Motion only, Office Depot will assume that the Cowie Agreement is
    a valid oral agreement between Cohn and Allied.

("OCS"). (SUF 6). In turn, Office Depot purchased all of the outstanding stock of OCS. (SUF 7).[2]

**GRAPHICAL REPRESENTATION OF TRANSACTION**



The terms and conditions of the transaction were memorialized in a confidential document entitled the "Stock Purchase Agreement" (the "SPA"). (SUF 8). As the SPA between the parties demonstrates, Office Depot paid a significant amount of consideration for the stock of the newly formed company, OCS (i.e. Allied's transferred assets and liabilities) at the time of closing. (SUF 9).

**B.    Office Depot and Allied Remain Separate Entities**

While Office Depot acquired the newly formed company OCS, Allied remained and continues to remain a separate and distinct entity for purposes of winding down Allied, and which kept any assets or liabilities not transferred to OCS. (SUF 10). Indeed, Allied is not, nor was it ever, controlled or operated in any way by Office Depot or OCS. (SUF 11). For example, Howard Brown, who is the Managing Member of Allied, has been the CEO of Allied before and after the transaction. (SUF 12). Moreover, although Mr. Brown and his son provided limited

---

[2]    Cohn did not have any involvement in or knowledge of the details of the transaction between Office Depot and Allied. (SUF 27).

1  consulting services to Office Depot pursuant to a consulting agreement and a

2  transition services agreement, those agreements terminated in December 2006.

3  (SUF 13, 14).  Further, at this time, none of Allied's key shareholders listed at

4  Schedule 1.1(g) of the SPA, were or are employees, officers, or directors with Office

5  Depot. (SUF 14).

6      **C.    Office Depot Only Assumed Specified**

7          **Allied Employment Agreements**

8      Through the transaction, Office Depot did not hire all of the employees at

9  Allied and did not assume all of the employment contracts executed by Allied.

10  (SUF 15).  Rather, Office Depot only assumed those Allied employment agreements

11  to the extent that such agreements are specifically listed on Schedule 4.12 of the

12  SPA <u>and</u> concern the individuals also set forth on Schedule 10.1(a) of the SPA.

13  (SUF 15).  The employment agreements and arrangements were listed one-by-one

14  on Schedule 4.12 of the SPA, and were identified as both employment "agreements"

15  and "arrangements" because not every Allied employee had a formal written

16  contract.  (SUF 16).  For example, some employees' arrangements with Allied were

17  memorialized in offer letters or one page documents that Allied called a "Personnel

18  Action Form."  (SUF 17).  In regard to Cohn, however, the only employment

19  agreement or arrangement identified on Schedule 4.12, and thus the only

20  employment agreement or arrangement Office Depot assumed was the written

21  "Employment Agreement, dated as of March 25, 2002." (SUF 18).

22      Leading up to the ultimate transaction, at no point during the due diligence or

23  at any point prior to the execution of the SPA did Allied (a) provide Office Depot

24  with a written description of what Cohn calls the "Cowie Agreement" or (b) verbally

25  tell Office Depot about the "Cowie Agreement."  (SUF 19).  In addition, Monica

26  Leuchtefeld, the Executive Vice President of Office Depot who was responsible for

27  the Business Development team at the time of the Allied transaction, personally

28

OFFICE DEPOT'S MOTION FOR
SUMMARY JUDGMENT

spoke with Mr. Brown prior to the execution of the SPA about rehiring Cohn (as Cohn had been employed previously with Office Depot).  (SUF 20).  Although Mr. Brown inquired whether Office Depot would have any hard feelings about employing Cohn, he never disclosed or even mentioned the purported Cowie Agreement. (SUF 21).  Ultimately, the first time anyone from Allied notified Office Depot about the "Cowie Agreement" was *after* Mr. Cowie transitioned to a new sales position in July 2006, and thus over two months after the execution of the SPA. (SUF 22).

**D.    The Integration of the Specified**

**Acquired Allied Assets and Liabilities**

Following the transaction, Office Depot has taken extensive steps to integrate the business acquired from Allied into Office Depot's BSD.  (SUF 23).  This integration has involved significant time and resources, as Office Depot has trained and hired new employees, developed different marketing packages, and generally incorporated new products and services into the Office Depot business model.  (SUF 23).  Further, while Office Depot hired many (but not all) of Allied's sales employees, the hired employees are working within a new management structure and many are in new capacities.  (SUF 24).  In fact, as part of Office Depot's integration efforts, former Allied employees that joined Office Depot and have remained employed with Office Depot have been in an ongoing process to convert to Office Depot's sales and compensation structure.  (SUF 24).  Thus, Office Depot's integration efforts have involved extensive time and resources.  (SUF 25).

**E.    Office Depot's Employment of Cohn**

After the closing of the SPA, Office Depot employed former Allied employee Cohn.  (SUF 26).  Because Office Depot carried over Allied's commission and pay structure for former Allied employees, Office Depot automatically paid the former Allied employees in the Western Region, including Mr. Cohn, under exactly the

same commission structure as they had been paid previously by Allied. (SUF 28). Accordingly, Mr. Cohn was paid as he was paid by Allied, including the 5% commission he had been receiving at Allied for accounts serviced by Mr. Cowie. (SUF 29). Office Depot did not, however, agree to the continued payment of the 5% commission because of any Cowie Agreement or because Office Depot had any contractual obligation to pay this 5% commission or to transfer any of Mr. Cowie's accounts to Cohn. (SUF 32).

## III.  Argument

### A.    Legal Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party, and an issue is "material" if its resolution could affect the outcome of the action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In ruling on a motion for summary judgment, the moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must "go beyond the pleadings and, by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. When determining whether a genuine issue of material fact exists, the court views the evidence in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[a] scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact" precluding summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

OFFICE DEPOT'S MOTION FOR SUMMARY JUDGMENT

**B.**    **Office Depot Did Not Assume the**

**Cowie Agreement Through Its Transaction with Allied**

Under California law, the general rule is that a purchaser of assets, such as Office Depot, does not automatically assume the seller's liabilities.  *See Ray v. Alad Corp.*, 19 Cal. 3d 22, 28 (Cal. 1977).  Rather, a purchaser like Office Depot can only be held liable for the seller's debts under four limited circumstances, which are as follows:

(1)    the purchaser expressly or impliedly agrees to such assumption;

(2)    the transaction amounts to a consolidation or merger of the two corporations;

(3)    the purchasing corporation is merely a continuation of the selling corporation; or

(4)    the transaction is entered into fraudulently to escape liability for debts.

*Id.*  Because none of the stated grounds for imposing liability on a purchaser are present here, Office Depot cannot be held liable for Allied's alleged obligations under the Cowie Agreement as a matter of law.  Accordingly, summary judgment should be entered in Office Depot's favor.

**1.**    **Office Depot Did Not Assume Liability For**

**The Cowie Agreement Under The SPA**

**a.**    **The SPA Provides that Office Depot Only Assumed**

**Cohn's Written Employment Agreement, Dated**

**March 25, 2002, and Not the Oral Cowie Agreement**

Cohn first cannot establish that Office Depot expressly or impliedly assumed the Cowie Agreement under the SPA.  In this regard, the courts "first consider the language of the purchase agreement itself."  *Franklin v. USX Corp.*, 87 Cal. App. 4th 615, 621 (Cal. Ct. App. 2001).  As the SPA makes clear, Office Depot assumed only those contracts that were specifically described and listed by Allied.

1        The SPA specifically incorporates by reference all "schedules, exhibits and

2    annexes" thereto. *See* SPA, p. 1. Schedule 10.1(b), entitled "Assumed Employment

3    Agreement," provides that only those contracts "included under 'List of

4    Employment Agreements' on Schedule 4.12 to the extent providing for the current

5    services of a sales person listed on Schedule 10.1(a)" were assumed under the SPA.

6    *See* SPA, Schedule 10.1(b). Accordingly, Office Depot only assumed those

7    employment agreements set forth on Schedule 4.12 to the extent said employee was

8    also identified on Schedule 10.1(a). Here, Cohn was identified on Schedule 10.1(a)

9    and his written employment agreement was identified on Schedule 4.12. *See* SPA,

10   Schedule 4.12, List of Employment Agreement, No. 45; *see also* SPA, Schedule

11   10.1(a). No other agreements, verbal or otherwise, between Cohn and Allied, were

12   identified on Schedule 4.12.

13       Importantly, Section 4.12 of the SPA, entitled "Material Contracts,"

14   specifically provides:

15       (a)   Schedule 4.12 lists ***all*** written agreements, contracts, leases,

16   subleases and ***other binding commitments*** (or groups of related
     agreements, contracts and binding commitments with the same or

17   related parties) ("Contracts") to which the Company [Allied] or any

18   Subsidiary is a party or by which any of their respective assets or
     properties are bound comprising of the following . . . Sales Associate

19   and Sales Manager Contracts and Customer Contracts . . .

20

21   SPA, Schedule 4.12 (emphasis added).

22       Reading the forgoing sections and schedules together, on the face of the SPA,

23   Office Depot only assumed Cohn's written agreement, and it did not assume any

24

25

26

27

28

1  other agreement with Cohn, nor did it even have notice of any other agreement with

2  Cohn, under the SPA or otherwise.  (SUF 15, 18).[3]

3       Likewise, nowhere in the SPA is there any agreement suggesting that oral

4  agreements need not be disclosed; rather, when a verbal agreement that was to be

5  assigned did exist, Allied disclosed such an agreement to Office Depot.  *See* SPA,

6  Schedule 4.12, List of Customer Contracts, No. 10.  Tellingly, however, Allied did

7  not list the Cowie Agreement, and thus, it did not become part of the transaction

8  between Allied and Office Depot.

9       In fact, the undisputed evidence reveals that the first time anyone affiliated

10 with Allied discussed a purported "Cowie Agreement" with Office Depot was

11 months *after* the SPA was executed.  *See* M. Brown E-mail to P. Welch, dated Aug.

12 8, 2006.[4]  Thus, given the unequivocal evidence that Office Depot did not even

13

14

15  _____

16 [3]      To the extent Section 10.1(b) is inconsistent with Schedule 10.1(b), in that it suggests Office Depot will honor all employment arrangements regardless of

17 whether they are listed on Schedule 4.12, the more specific provision – Schedule 10.1(b) and Schedule 4.12 – must prevail under California law.  *See Scudder v.*

18 *Perce*, 159 Cal. 429, 433 (Cal. 1911) ( "[W]hen general and specific provisions of a contract deal with the same subject-matter, the specific provisions, if inconsistent

19 with the general provisions, are of controlling force.").

20 [4]      Allied's principals, who Cohn alleges were a part of the negotiations over the purported Cowie Agreement, did not notify Office Depot of the existence of the

21 purported Cowie Agreement until *after* Office Depot's transaction with Allied.

22 (SUF 22); *see also* Brown Depo. at 57:16 – 58:9 ("Q: Did you have any discussions with anyone at any time affiliated with Office Depot where you confirmed to them

23 the terms of Andy Cohn's agreement with Allied as it related to the employment of Darren Cowie? . . . A: Yes.  Q: When was the first such conversation? A: I think

24 around the – this is a very similar time.  Could have been the end of July, beginning

25 of August.  Q: Of 2006?  A: Seven.  Q: I'm sorry.  2007?  A: Right.");  Aiello Depo.

26 at 16:7-15 ("Q: You ended up actually saying in August 2007 is when you had the conversation with one of Office Depot's attorneys relating to an arrangement

27 between Andy and Allied concerning Darren Cowie?  A: Correct.  Q: Was that the first time that you told anyone at Office Depot about this arrangement?  A: Yes.").

28

1    know about the Cowie Agreement, much less expressly or impliedly agree to assume

2    the Cowie Agreement, there are no genuine issues of fact for trial.

3                    **b.**        **Office Depot Did Not Assume the**

4                              **Cowie Agreement Through Partial Performance**

5            Office Depot anticipates that Cohn will argue that Office Depot is bound by

6    the Cowie Agreement due to its payment of a 5% commission to Cohn on Mr.

7    Cowie's accounts.  Cohn's reasoning, however, ignores the entire body of law on

8    successor liability, is inconsistent with California law, and is an unsupported legal

9    theory. *See Ray*, 19 Cal. 3d at 28.

10           While the law is unequivocally clear that part performance is not a basis for

11   imposing successor liability, if the Court is inclined to create a new exception, the

12   Court should require Cohn to demonstrate that Office Depot's payment of the 5%

13   commission was *in furtherance of the Cowie Agreement*.  This reasoning finds

14   support in California statute of frauds cases, wherein the law is clear that part

15   performance of an oral contract is significant *only if* the performance clearly relates

16   to the alleged contract.  *See Am. Cas. Co. v. Curran Prods., Inc.*, 212 Cal. App. 2d

17   386, 392-93 (Cal. Ct. App. 1963). As stated by the Court:

18           The acts relied on must clearly appear to have been performed in
19           pursuance of a particular contract itself and not because of the
             existence of some other contractual relationship or for some other
20           reason.  It is not enough, therefore, that the acts of part performance
21           relied on amo[unt] to evidence of some contractual agreement.  The
             acts in question must constitute unequivocal and satisfactory evidence
22           only of the contract sought to be removed from the operation of the
23           statute.

24   *Id.* at 392-93 (citing 23 California Jurisprudence 2d, Statute Of Frauds, Section 129,

25   page 400); *see also Paul v. Layne & Bowler Corp.*, 9 Cal. 2d 561, 564 (Cal. 1937)

26   (holding that "the part performance must relate to the transaction involved").

27   Similarly, if the Court were to change the well-settled law of successor liability, the

28

OFFICE DEPOT'S MOTION FOR
                                                                    SUMMARY JUDGMENT

Court should, at a minimum, impose this requirement on Cohn, and require him to show that Office Depot's payment of the 5% commission was performed in furtherance of the Cowie Agreement, and not for some other reason.

Turning to the record evidence here, Cohn has not set forth any facts demonstrating that Office Depot's payment of the 5% commission in any way reflects its assent to, or even awareness of, the Cowie Agreement.  In fact, Office Depot did not have any knowledge of the alleged Cowie Agreement from either Cohn or Allied at the time of the Allied transaction.  (SUF 22).  Rather, after the closing, Office Depot simply carried over Allied's commission and pay structure, and automatically paid employees as they had been paid previously by Allied. (SUF 28).  Only months later did Office Depot become aware of a purported Cowie Agreement.  The fact that Office Depot voluntarily agreed to keep in place how Cohn was historically paid does not constitute any sort of assent to the entire Cowie Agreement (as Office Depot expressly denied any such agreement including any requirement to transfer accounts to Cohn).  Accordingly, Cohn cannot prevail pursuant to his unsupported "part performance" theory.[5]

## 2.  Office Depot and Allied Remain Two Separate Companies

In determining whether Office Depot assumed the Cowie Agreement, the Court must next consider whether the transaction between Allied and Office Depot amounted to a consolidation or merger of the two companies.  *See Franklin*, 87 Cal. App. 4th at 625.  In making this determination, courts pay particular attention to whether the purchaser corporation paid adequate consideration for the seller's assets.

---

[5]    Cohn also suggests that Office Depot should not have requested a written agreement from Cohn, stating that "[t]here is no requirement that an agreement must be in writing to be enforceable." Cohn's Memo. Support Mot. Summ. J. at 7. Cohn's argument, however, is unavailing, as Cohn's Employment Agreement required all amendments to be in writing.  (SUF 18).  In addition, Office Depot acquired only those employment agreements to the extent that such agreements were listed on Schedule 4.12 of the SPA and concerned individuals also set forth on Schedule 10.1(a) of the SPA, and thus, the company logically needed to see any purported contract to determine whether or not the purported "Cowie Agreement" was one of the agreements assumed under the SPA.

*See id.* at 627 ("[T]he common denominator, which must be present in order to avoid the general rule of successor non-liability, is the payment of inadequate consideration."). Thus, if inadequate consideration was paid, courts may find successor liability. *See id.* In addition, California courts consider the following five factors in determining whether a transaction styled as an asset purchase is a de facto merger: (1) was the consideration paid for the assets solely the stock of the purchaser or its parent; (2) did the purchaser continue the same enterprise after the sale; (3) did the shareholders of the seller become shareholders of the purchaser; (4) did the seller liquidate; and (5) did the buyer assume the liabilities necessary to carry on the business of the seller. *See Franklin*, 87 Cal. App. 4th at 626 (citing *Marks v. Minn. Mining & Mfg. Co.*, 187 Cal. App. 3d 1429, 1436 (Cal. Ct. App. 1986)).

In the instant case, Office Depot has presented undisputable evidence that Office Depot paid significant consideration for the purchase of certain of Allied's assets. (SUF 9). Thus, Office Depot does not fall within the exception to the general rule of successor non-liability. *See Sunnyside Dev. Co., LLC v. OPSYS Ltd.*, No. C 05 0553 MHP, 2007 WL 2562142, *9 (N.D. Cal. Aug. 29, 2007) ("[A] de facto merger requires a showing that the purchaser paid inadequate consideration for the seller's assets. . . . California courts justify this rigid rule by citing the need for predictability in the field of corporate assets transfers."); *see also Steenolsen v. Squaw Valley SLI Corp.*, Case No. BC 243817, 2004 WL 5175941, *7 (Cal. Super. Ct. Nov. 7, 2004) ("Without this factor of inadequate consideration, there was no *de facto* merger, nor could K2A [the purchaser] be deemed a mere continuation of Morrow Oregon [the seller].").

Even if the Court looks beyond the consideration Office Depot paid for Allied, the facts reveal that Allied and Office Depot remain separate corporate entities and did not in fact merge or consolidate. (SUF 10). Indeed, an examination of each company's officers and directors demonstrates that the two companies are

not the same.  (SUF 11, 14).  Although Mr. Brown and his son provided consulting services after the closing of the SPA pursuant to two contracts, those contracts expired in December 2006.  (SUF 13, 14).  Further, Allied was still an ongoing entity until at least October 2007 (over a year after the transaction), and Mr. Brown remains the CEO.  (SUF 10, 12).

In addition, Office Depot has not continued to operate Allied as the same enterprise following the transaction.  Rather, Office Depot has spent significant resources integrating Allied into Office Depot's Business Solutions Division.  (SUF 23, 25).  Specifically, Office Depot has offered training to the employees, developed new marketing initiatives, engaged in the process of converting former Allied employees into Office Depot's sales and compensation structure, and generally incorporated new products and services into the Office Depot business model. (SUF 23, 24, 25).  Accordingly, because all of the evidence shows that Office Depot and Allied remain separate corporate entities, there are no genuine issues for trial on the de facto merger theory, and Office Depot is entitled to summary judgment as a matter of law.

### 3.    <u>Office Depot Is Not a Mere Continuation of Allied</u>

Cohn also will not be able to present any evidence indicating that Office Depot is a mere continuation of Allied.  Under California law, this exception applies upon a showing that "(1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors," or "(2) one or more persons were officers, directors, or stockholders of both corporations."  *Ray*, 19 Cal. 3d at 29.  Here, as discussed above, Office Depot paid Allied substantial consideration for the transaction, and Office Depot does not have any of the same officers, directors, or major stockholders as Allied.  (SUF 9, 14).  Accordingly, Office Depot has demonstrated that this exception is not applicable as a matter of law.

OFFICE DEPOT'S MOTION FOR SUMMARY JUDGMENT

**4.    <u>Neither Allied Nor Office Depot Entered Into</u>**

**<u>the SPA to Fraudulently Escape Liability for Debts</u>**

The final question for the Court's consideration is whether Cohn can establish that Office Depot and Allied entered into the transaction to fraudulently escape liability for debts.  The answer is unequivocally no.  Rather, Allied and Office Depot "determined that it [wa]s in the best interests of their respective companies and stockholders to consummate the transactions contemplated by" the SPA.  *See* SPA, Recital E.  Thus, because there is, quite simply, no evidence that the parties entered into this transaction with a fraudulent purpose, the fraudulent transfer exception cannot apply as a matter of law.

**IV.    <u>Conclusion</u>**

For these reasons, Office Depot respectfully requests that the Court enter final summary judgment in Office Depot's favor and against Cohn as Office Depot did not assume the "Cowie Agreement."

Dated: February 15, 2008            HOGAN & HARTSON, L.L.P.


                                    By:  /s/  *Robin J. Samuel*
                                        Mark R. Cheskin
                                        Robin J. Samuel
                                        Brian L. Lerner
                                        Attorneys for Defendant/Counter-Plaintiff
                                        OFFICE DEPOT, INC.

OFFICE DEPOT'S MOTION FOR
SUMMARY JUDGMENT

**PROOF OF SERVICE**

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF LOS ANGELES        )

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen and not a party to the within action; my business address is: HOGAN & HARTSON, LLP, 1999 Avenue of the Stars, Suite 1400, Los Angeles, CA  90067.

On February 15, 2008, I caused the foregoing documents described as:

**OFFICE DEPOT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT [FRCP 56] AND/OR FOR ENTRY OF AN ORDER SPECIFYING FACTS AS APPEARING WITHOUT SUBSTANTIAL CONTROVERSY [FRCP 56(D)]**

to be served on the interested parties in this action by placing _ the original X a true copy thereof enclosed in sealed envelopes addressed as follows:

Robert S. Chapman (rchapman@ggfirm.com)
Julia Rhea Haye (jhaye@ggfirm.com)
Stephen S Smith (ssmith@ggfirm.com)
Greenberg Glusker Fields Claman & Machtinger LLP
1900 Avenue Of The Stars
21st Floor
Los Angeles, California 90067

[X]    **BY MAIL.**  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepared at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]    **BY HAND DELIVERY.**  I caused such envelope to be delivered by hand to the offices of the addressee(s) following ordinary business practices.

[ ]    **BY FACSIMILE.**  I caused such document(s) to be delivered by facsimile to the offices of the addressee(s) following ordinary business practices from the following facsimile machine (310) 785-4601:
       **Upon completion of the said facsimile machine transmission, the transmitting machine issued a transmission report showing the transmission was complete and without error.  A copy of said transmission report is attached hereto.**

[X]    **BY ELECTRONIC SERVICE.**  I caused such document(s) to be delivered in PDF format when the attached document was e-filed with the Clerk of the Court using the CM/ECF system which will automatically send notification of such filing to the e-mail addresses listed above:

[ ]    **BY FEDERAL EXPRESS.**  I caused such document to be delivered by overnight mail to the offices of the addressee(s) by placing it for collection by Federal express following ordinary business practices by my firm, to wit, that packages will either be picked up from my firm by Federal Express and/or delivered by  my firm to the Federal express office.

1

[X]     (Federal)     I declare under penalty of perjury under the laws of the United States of America that the  foregoing is true and correct.  Executed on February 15, 2008, at Los Angeles, California.

2

3

_____CARMELA ELIAS_____              _____/s/  *Carmela Elias*_____

4

Print Name                                              Signature

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28